IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


MARVIN C. PAFFORD, JR.,
     Plaintiff,

vs.                                   Case No. 3:09cv315/MCR/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
     Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

      This case has been referred to the undersigned magistrate judge under the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of the Northern District of Florida pertaining to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq.* It is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

      Upon review of the record, this court concludes that the Commissioner's final determination is supported by substantial record evidence and is the result of the application of proper legal principles. The court therefore recommends that the decision of the Commissioner be affirmed.

I.    PROCEDURAL HISTORY

On March 8, 1999, the SSA found that Plaintiff had been under a "disability" as defined in the Social Security Act as of October 23, 1996 (Tr. 14).[1] On February 20, 2002, the SSA reviewed Plaintiff's record and determined that his disability continued (*id.*). On September 15, 2005, after again reviewing Plaintiff's record, the SSA found that as of November 1, 2005, Plaintiff was no longer disabled; this decision was upheld on reconsideration (*id.*). Plaintiff requested review by an administrative law judge ("ALJ"), who held a hearing on March 1, 2007, at which Plaintiff was represented by counsel and testified. A vocational expert ("VE") also testified. On April 10, 2007, the ALJ rendered a decision finding that as of November 1, 2005, Plaintiff was no longer disabled (Tr. 14–22). The Appeals Council denied Plaintiff's request for review (Tr. 6–9). Thus the April 10, 2007, decision of the ALJ stands as the final decision of the Commissioner, now subject to judicial review. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

II.   FINDINGS OF THE ALJ

In his April 10, 2007, decision finding that Plaintiff's disability had ended as of November 1, 2005, the ALJ made the following findings:

1)    The most recent favorable medical decision finding that Plaintiff continued to be disabled was the determination dated February 20, 2002, or the "comparison point decision" ("CPD").

2)    As of February 20, 2002, the date of the CPD, Plaintiff had the following medically determinable impairments: status post multiple crush injuries with a non-healing residual open wound in his abdomen secondary to ischemia from the trauma; small bowel syndrome with frequent diarrhea; and abdominal pain. These impairments met a listed impairment.

3)    Through November 1, 2005, Plaintiff had not engaged in substantial gainful activity.

4)    As of November 1, 2005, Plaintiff had the following medically determinable impairments: hypertension and status post abdominal trauma with multiple surgeries.

5)    As of November 1, 2005, Plaintiff had no impairment or combination of impairments which met or medically equaled a listed impairment.

6)    Medical improvement occurred as of November 1, 2005.

---

[1] All references to "Tr." refer to the transcript of the SSA record filed on October 13, 2009 (Doc. 6).

7)      Plaintiff's medical improvement was related to the ability to work because, as of November 1, 2005, the impairments present at the time of the CPD no longer met or medically equaled a listing.

8)      As of November 1, 2005, Plaintiff continued to have a severe impairment or combination of impairments.

9)      Based on the impairments present as of November 1, 2005, Plaintiff had the residual functional capacity ("RFC") to occasionally lift or carry up to fifty pounds; frequently lift or carry up to twenty-five pounds; stand, sit or walk up to six hours; and frequently bend or stoop.  Plaintiff needed to use a bathroom every three hours and to have minimal contact with the public.

10)     As of November 1, 2005, Plaintiff was unable to perform his past relevant work.

11)     On November 1, 2005, Plaintiff was a younger individual age 18–49.

12)     Plaintiff has at least a high school education and is able to communicate in English.

13)     Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

14)     As of November 1, 2005, based on Plaintiff's age, education, work experience, RFC to perform a limited range of medium work, and the testimony of VE, Plaintiff was able to perform the jobs of hand packager, fish cleaner, and industrial cleaner; at the light level of exertion Plaintiff could also perform the jobs of poultry worker, small products assembler, and raw shellfish preparer.

15)     Plaintiff's disability ended as of November 1, 2005.

III.    STANDARD OF REVIEW

        In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to

provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Ingram, 496 F.3d at 1260.

The court must also determine whether the ALJ's decision is supported by substantial evidence. Moore, 405 F.3d at 1211 (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158–59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, the decision must be affirmed. Ingram, 496 F.3d at 1260; Miles, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and it encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Moore, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. Moore, 405 F.3d at 1211 (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Miles, 84 F.3d at 1400. Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); Ingram, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2) (A).

The Commissioner's regulations provide an eight-step sequential evaluation process to be followed in DIB cessation cases to determine if a claimant's disability continues. This process is described as follows:

> First, the claimant must not be engaged in "substantial gainful activity." Second, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant's disability continues. If the severe

impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the third step, namely, an assessment of whether there has been medical improvement of the claimant's condition. Fourth, if there has been medical improvement, it must be determined if that improvement is related to the ability to do work. If there has not been medical improvement, the examiner proceeds to the fifth step to determine whether any exceptions listed in 20 C.F.R. § 404.1594(d) and (e) apply. Sixth, if there has been medical improvement, it must be determined whether the claimant has a severe impairment or combination of impairments. If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the seventh step, an assessment of the claimant's residual functional capacity ["RFC"]. The assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the eighth and final step of the evaluation process to determine whether, in light of his or her RFC, age, education and work experience, the claimant can perform other work.

Whetstone v. Barnhart, 263 F. Supp. 2d 1318, 1321–23 (M.D. Ala. 2003) (citing 20 C.F.R. § 404.1594(f)(1)–(8)). In cessation cases, the "appropriate inquiry is whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." Id. at 1322 (quoting Chumbley v. Shalala, Case No. 92-12VAL (RLH), 1994 WL 774030, at *3 (M.D. Ga. 1994) (citations omitted)). In order to find that the claimant's condition has improved, the ALJ "must compare original medical evidence [which supported a finding of disability] and new medical evidence." Id. at 1322 (citations omitted). The burden is on the ALJ to show that there has been medical improvement; in order to show this, there must be evidence of medical improvement in the form of "symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1594(b)(1).

IV.   PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

   A.   Personal, Employment, and Relevant Medical History[2]

   Plaintiff is a high school graduate, with past work experience as a field tractor driver, charter fishing boat mate, and construction worker (Tr. 304; 414; 416). At the time of the March 1, 2007, administrative hearing Plaintiff was forty-eight years of age (Tr. 410). Plaintiff testified that in 1996, while he was working at a sugar cane farm as a tractor driver, he was crushed between two tractors (Tr. 417). The record reflects that Plaintiff suffered multiple pelvic fractures and abdominal

---

   [2]   This outline of Plaintiff's medical history does not include records or assessments of any psychological condition, as that condition is not relevant to any issue raised in this appeal.

injuries which initially required numerous surgeries, including a colostomy and a splenectomy, and a two-month period of hospitalization (Tr. 304; 368). In 1997 Plaintiff was re-hospitalized for four months after undergoing re-anasatomosis surgery, which was complicated by sepsis, respiratory distress, and renal failure (Tr. 304). Subsequent medical records note that Plaintiff suffered from persistent diarrhea and had trouble controlling his bowel movements (*see*, *e.g.,* Tr. 230; 284). In an assessment completed in February 2002, Richard W. Lucey, M.D., opined that following his 1996 accident Plaintiff suffered from "residual major abdominal wall weakness, herniations, and area of non-healing wound, complicated by small bowel syndrome with frequent diarrhea as well as abdominal pain with bowel movements in addition to the abdominal wall pain with physical activity" (Tr. 301).

The first medical report in the record subsequent to February 2002, and thus subsequent to the CPD, appears to be from April 2004, when physician David R. Smith, M.D., treated Plaintiff for sinusitis and fatigue (Tr. 370). Dr. Smith also saw Plaintiff in December 2004, when he noted that Plaintiff was doing well and denied any abdominal pain, nausea or vomiting, changes in his bowel habits, or other symptoms (Tr. 368). Plaintiff presented to Dr. Smith several times in 2005 and 2006, generally for follow-up of treatment for hypertension or routine vaccinations (Tr. 362–67; 393–97). There appear to be no additional reports of any medical treatment in the administrative file. The administrative file contains several reports of consultative examinations or assessments, however. In July 2005 Douglas Bond, D.O., conducted a consultative examination in connection with Plaintiff's application for continuation of disability benefits (Tr. 304–08). Dr. Bond noted that Plaintiff denied cardiovascular, respiratory, musculoskeletal, or neurological problems (Tr. 304). Plaintiff reported abdominal and rectal pain associated with bowel movements, with no nausea or vomiting. Since his last evaluation in 2002 Plaintiff had regained some of the weight he had lost following his hospitalizations. The report of Plaintiff's physical examination was largely unremarkable (Tr. 305), although Dr. Bond noted that Plaintiff had a large midline abdominal surgical scar with some tissue break-down and adhesion of the scar mass. Dr. Bond's assessment was status post multiple abdominal surgeries since 1996, including colostomy and re-anastomosis with postoperative sepsis in 1997. According to Dr. Bond, Plaintiff's multiple crush injuries to the

pelvis and abdomen had healed with significant scarring, and Plaintiff continued to have chronic abdominal pain with defecation (*id.*).

Physical therapist William Moore completed a Functional Capacity Evaluation ("FCE") of Plaintiff on December 21, 2005 (Tr. 321–25). Mr. Moore determined that Plaintiff's Work Tolerance Level ("WTL") was "medium" (Tr. 321). This WTL allowed for occasionally lifting/carrying a maximum of fifty pounds, frequently lifting/carrying up to twenty-five pounds, constantly handling objects up to ten pounds; also, a "medium" WTL could require standing and/or walking to a significant degree and sitting for brief periods of time (*id.*). According to Mr. Moore, full-time work with restrictions was achievable (*id.*). Concluding the FCE, Mr. Moore noted that Plaintiff reported having extensive internal trauma from his injury and "great concern" about the need to remain in close proximity to a bathroom (Tr. 325). Mr. Moore stated that "[i]t is beyond the scope of this evaluator to what extent the patient's perception of his current medical conditions will affect his daily performance with regards to return to work opportunities" (*id.*).

> B.     Other Information within Plaintiff's Administrative File
>
>        Assessments of Non-examining Physicians

On July 27, 2005, a non-examining SSA physician completed a Physical RFC Assessment of Plaintiff (Tr. 313–20). The physician opined that Plaintiff could frequently lift and/or carry ten pounds, stand and/or walk for at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Plaintiff had the unlimited ability to push and/or pull. Among other comments, the physician noted "currently significant medical improvement found" (Tr. 315). The physician also opined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl but he could never climb ladders, ropes, or scaffolds (*id.*). Plaintiff had no visual, communicative, or manipulative limitations but should avoid concentrated exposure to extreme cold and extreme heat (Tr. 316–17). He should avoid even moderate exposure to fumes, etc., and to hazards (machinery, heights, etc.) but required no restrictions with respect to wetness, humidity, noise, and vibrations (Tr. 317).

A second Physical RFC Assessment form was completed on January 3, 2006, by a different non-examining SSA physician (Tr. 340– 47). This physician opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and stand, walk, or sit about

six hours in an eight-hour workday (Tr. 341). Plaintiff had the unlimited ability to push or pull (*id.*). Plaintiff had no postural, manipulative, communicative, or environmental limitations (Tr. 342–44). He also had no visual limitations, except for limited near acuity (Tr. 343).

<u>Plaintiff's "Report of Continuing Disability Interview" and "Function Report"</u>

On May 11, 2005, Plaintiff completed a document titled "Report of Continuing Disability Interview" (Tr. 120–26). In this Interview, Plaintiff reported that he "can't stay away from the bathroom for long. Still in pain when I go to the bathroom. No colon; right side of hip was crushed in farming accident, broken ribs" (Tr. 120). According to Plaintiff, the only change in his disabling condition since he previously reported such information to the SSA was that he had gained back some of the weight he had lost after his 1996 accident; he was up to 190 pounds (*id.*). With respect to his daily activities, Plaintiff reported that he drove his father to a lot to feed livestock; walked forty-five minutes to an hour; and sometimes—apparently "within [a period of] 3 to 4 hours"—drove to the store to shop or eat (Tr. 122). Plaintiff indicated that he cooked for himself, hosed down his patio, shopped, and took care of a ferret, pair of cockatiels, five dogs, four turtles, and a small garden (Tr. 123).

In a Function Report completed by Plaintiff in August 2005, Plaintiff stated that he needed to have two bowel movements each morning, starting about 5:00 a.m. or 6:00 a.m., and that by 1:30 p.m. he had defecated two more times (Tr. 132; 139). Sometime after 5:00 p.m., Plaintiff usually needed to have another bowel movement and he had yet another one about midnight (Tr. 139).

<u>Disability Hearing Officer's Report of Disability Hearing</u>

On February 21, 2006, Plaintiff presented for a hearing before a disability hearing officer (Tr. 152–61). According to the disability hearing officer's report, Plaintiff reported defecating six to eight times per day (Tr. 152). He experienced pain in his stomach and digestive tract, but having a bowel movement sometimes relieved the pain. According to Plaintiff, he had pain daily one-half hour prior to having a bowel movement and one-half hour afterward (Tr. 154). Plaintiff's bowel movements interrupted his sleep (Tr. 155). Additionally, Plaintiff reported that his activities of daily living were affected after meals and that the elimination process lasted approximately fifteen to twenty minutes for each bowel movement (Tr. 160).

## V. DISCUSSION

Plaintiff seeks reversal of this matter and remand for further proceedings, arguing that for two reasons the Commissioner's decision is not supported by substantial evidence: 1) at the administrative hearing the ALJ failed to develop the record adequately concerning how often Plaintiff needed access to a bathroom by refusing to allow Plaintiff's counsel to re-examine him to obtain additional testimony on that issue and by refusing to allow counsel to pose a hypothetical question to the VE using the additional testimony (*see* Doc. 8 at 12–16); and 2) the ALJ acted as an adversary at the administrative hearing by disrupting the direct examination of Plaintiff's counsel, refusing to allow counsel to ask leading questions or pose a hypothetical question to the VE, and misstating Plaintiff's testimony (*see* Doc. 8 at 16–17). Because the court views these two arguments as both essentially sounding in due process, the court addresses them together.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quotation and citation omitted). With respect to Social Security administrative hearings before an ALJ, it is well established in the Eleventh Circuit that an ALJ has an affirmative duty to develop a full and fair record because administrative hearings are not adversary proceedings. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Lucas v. Sullivan, 918 F.2d 1567, 1573 (11th Cir. 1990); Smith v. Bowen, 792 F.2d 1547, 1551 (11th Cir. 1986); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ's duty to develop the record exists even if, as in this case, the plaintiff is represented by an attorney. Brown, 44 F.3d at 934 (citation omitted). Nevertheless, it remains the plaintiff's burden prove that he is disabled, and he is responsible for producing evidence in support of his claim. *See* Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003 (citing 20 C.F.R. § 416.912(a), (c)). A record is full and fair, and need not be further developed, if the ALJ has sufficient evidence to decide the case. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to make a decision, no showing of prejudice is made). Where the ALJ has sufficient information to decide the case the ALJ can do so. Graham, 129 F.3d at 1423. Furthermore, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Id.* In considering whether a remand

is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.* "The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits." <u>Brown</u>, 44 F.3d at 935–36.

In this case, Plaintiff's assertions of error center entirely around events that transpired during the administrative hearing. The transcript of the hearing reflects the following exchange:

ALJ: What's wrong with you? You can't work.

Pl.: I can't stay out of the bathroom long.

Q: Well, how long is long between going to the bathroom?

A: Can't stay out of there for three hours.

Q: You've got to go to the bathroom about every three hours?

A: After I eat. That's why I didn't eat this morning.

(Tr. 419).

The ALJ then asked, "That's your main problem is you have to go to the bathroom every three hours?" (Tr. 419). Plaintiff answered, "Yes, sir." (*id.*). The ALJ also inquired whether Plaintiff had talked with or received medication from his physician regarding his need to use the bathroom every three hours. Plaintiff responded that he had and that nothing could be done about his condition (Tr. 420). The ALJ once more asked Plaintiff, "Why can't you work? . . . you have to be near a bathroom every three hours. Is that it?" (Tr. 423). Again, Plaintiff responded in the affirmative (*id.*). Later, when Plaintiff testified about the unavailability of portable toilets while he was fishing, the ALJ inquired how long Plaintiff could wait between trips to the bathroom, if he had not eaten (Tr. 426). Plaintiff answered that it "depended" on what he last eaten, which was why he did not eat for several hours prior to going on a fishing trip (*id.*).

Answering a question posed by his counsel, Plaintiff testified that ten minutes prior to the December 2005 FCE, which had taken three hours to complete, he had needed to use the bathroom once; he also had used the bathroom twice more during the test (Tr. 429–30). Plaintiff stated, in response to a question by the ALJ, that he had not eaten prior to the test (Tr. 430). When asked by his attorney why he had used the bathroom so frequently during the FCE, Plaintiff responded somewhat equivocally, first stating that he had been in pain (*id.*), then indicating that he had used

the bathroom so he would not be "stopped up" and also because of the lifting required for the test (Tr. 433).

During the ALJ's questioning of the VE, the VE testified that in the course of a normal work day an employee should be provided with a morning and afternoon break of ten to fifteen minutes, as well as a thirty minute lunch break (Tr. 437). The ALJ posed several hypothetical questions to the VE, including whether there would be jobs available to an individual with Plaintiff's education and work history who could perform medium work but could not have frequent contact with the public (Tr. 437–39). The ALJ did not include in the hypothetical question the need to use a bathroom every three hours in light of the VE's testimony regarding the availability of scheduled breaks; the ALJ did note that facilities must be available, however, which would preclude the individual's ability to work out in the field (Tr. 438). The VE testified that, given these parameters, the jobs of hand packager, fish cleaner, and industrial cleaner would exist at the level of medium work (Tr. 439). At the light level of exertion, the jobs of poultry worker, small products assembler, and raw shellfish preparer would also exist (Tr. 439–40). Plaintiff's counsel then examined the VE. Relying on Plaintiff's testimony regarding the December 2005 FCE during which Plaintiff needed to use the facilities three times within approximately three hours, Plaintiff's counsel tried to pose a hypothetical question which involved an individual who required a bathroom break "on average every hour" (Tr. 441). The ALJ refused to permit the hypothetical question, however, ruling there was no proper foundation for it. Explaining his ruling, the ALJ stated that Plaintiff had testified he had used the bathroom three times within three hours during the Assessment because he was "backed up" and that there was no evidence that such use was a frequent occurrence (Tr. 442–43). The ALJ then also refused counsel's request to re-examine Plaintiff in order to establish a foundation for the hypothetical question that the ALJ had not permitted (Tr. 443).

The court concludes that the evidence, outlined above, supports a finding that the ALJ adequately developed the record during the hearing with regard to the frequency of Plaintiff's use of the bathroom. This evidence reflects that Plaintiff testified regarding his bathroom habits with regard to both after he had eaten and also when he had not eaten. As to the former circumstance, Plaintiff specifically indicated in response to questioning by the ALJ that he needed to use a bathroom about three hours after he had eaten (Tr. 419), then Plaintiff twice more affirmed the need

to use the facilities approximately every three hours (*id.*; Tr. 423). As to the latter circumstance, Plaintiff responded to the ALJ's question that the time in which he needed to use a toilet when he had not recently eaten depended on what he had last ingested (Tr. 426). Although Plaintiff thus did not estimate a period of time in which he would expect to need to use a bathroom when he had not recently eaten, his testimony indicated that when he did not eat he generally could wait longer than when he did eat, i.e., when he did not eat he was able to wait some time in excess of approximately three hours before needing to defecate again (*see id.*). As the ALJ indicated at the hearing, Plaintiff's testimony regarding the December 2005 FCE—when he had not eaten prior to taking the test but nevertheless needed to make three visits to the bathroom within approximately three hours—involved only one instance. As Plaintiff submits, the ALJ misstated the evidence by suggesting that Plaintiff had testified that he used the bathroom so frequently during the FCE because he was "backed up" (Tr. 442).[3] The court nevertheless concludes the record, as a whole, supports the ALJ's conclusion that the evidence does not show that Plaintiff routinely needs to defecate as frequently as three times in three hours. As outlined above, other than with respect to the December 2005 test, Plaintiff's hearing testimony does not reflect a once-per-hour average frequency of defecation; in addition, the limited medical record contains nothing to that effect, and his statements made in the Function Report (Tr. 132–39) and to the disability hearing officer likewise do not suggest such a pattern (Tr. 152–61).

In short, the court is satisfied the ALJ did not err by refusing to permit Plaintiff's counsel to re-examine Plaintiff regarding his bathroom use or to pose a hypothetical question to the VE based on such testimony. Rather, the ALJ had sufficient evidence before him, both medical and vocational, not only regarding Plaintiff's bathroom needs but also regarding his RFC to perform work, to decide this case. Graham, 129 F.3d at 1423; Brown, 44 F.3d at 935–36. Furthermore, Plaintiff has not alleged, much less shown, that he suffered any prejudice from the ALJ's rulings, which is required in order to obtain a remand for further development of the record based on the denial of due process. Graham, 129 F.3d at 1423.

---

[3] In fact, Plaintiff testified to the contrary: when asked why he need to have three bowel movements during the test, Plaintiff responded, "Not to be stopped up, I guess. I don't know. And the lifting, I reckon" (Tr. 433).

Plaintiff also contends that the Commissioner's decision is not supported by substantial evidence because the ALJ acted as an adversary at the March 1, 2007, administrative hearing. According to Plaintiff, the ALJ improperly disrupted counsel's direct examination of Plaintiff, refused to permit counsel to ask leading questions or to pose a requested hypothetical question to the VE, and mischaracterized Plaintiff's testimony. As discussed above, the ALJ did misstate Plaintiff's testimony with respect to why he needed to have three bowel movements during the December 2005 FCE. The ALJ indicated accurately, however, that the evidence, as a whole, does not show that such frequent activity was usual for Plaintiff. Thus the ALJ's mischaracterization of one part of Plaintiff's testimony—a relatively minor part, at that—did not prejudice Plaintiff and does not constitute reversible error. Absent a showing of prejudice, Plaintiff cannot establish that a remand is warranted based on an alleged due process violation. Graham, 129 F.3d at 1423. None of the ALJ's other alleged actions constitutes reversible error either. As discussed, the ALJ was not required to permit counsel to re-examine Plaintiff regarding his bathroom habits or to allow a hypothetical question based on such testimony. No prejudice therefore could result, even if the ALJ interfered with counsel's examination. Furthermore, even if the ALJ should not have refused to permit counsel to ask leading questions,[4] Plaintiff neither alleges nor can show prejudice, as the record was already adequately developed on the issue counsel sought to develop, i.e., the frequency of Plaintiff's bathroom use. Brown, 44 F.3d at 934. Here, the court concludes that Plaintiff was afforded "the opportunity to be heard at a meaningful time and in a meaningful manner," Mathews, 424 U.S. at 333, and thus that his right to due process at the administrative hearing was not compromised.

To the extent Plaintiff is asserting a claim of ALJ bias, he is not entitled to relief. While a review of the transcript suggests that the ALJ may have been abrupt with counsel, his conduct does require reversal of his decision. *See, e.g.*, Liteky v. United States, 510 U.S. 540, 555–56, 114 S. Ct.

---

[4] As noted above, a disability hearing is a non-adversarial proceeding in which the ALJ has an affirmative duty to develop the record. Brown, 44 F.3d at 934. Thus "the traditional reasons for distrusting testimony elicited by leading questions are absent." Shriver v. Chater, 1995 WL 454710, *3 (10th Cir. 1995). *See also* Cline v. Sec'y of Health, Educ. & Welfare, 444 F.2d 289, 291 (6th Cir.1971), and 42 U.S.C. § 405(b)(1) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."). Accordingly, as a general matter, the use of leading questions during a disability hearing, either by the ALJ or counsel for the claimant, may not be improper.

1147, 1157, 127 L. Ed. 2d 474 (1994) (a judge's "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are not enough to establish bias); *see also* Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) ("In light of the ALJ's detailed and reasoned written grounds for ruling against Bayliss, we conclude that the statements in the ALJ's opinion in which the ALJ expressed displeasure with the conduct of Bayliss's counsel are not sufficient to establish bias."). Plaintiff must show that the ALJ's behavior, in the context of the whole case, was "so extreme as to display clear inability to render fair judgment." Liteky, 510 U.S. at 551. Plaintiff points to nothing in the transcript of the administrative hearing or elsewhere in the record that rises to this level, and the court has found nothing.

VI.     CONCLUSION

        For the foregoing reasons, this court concludes that the Commissioner's cessation of benefits decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

        Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

        At Pensacola, Florida this 18th day of August 2010.


                                        /s/ Elizabeth M. Timothy
                                        **ELIZABETH M. TIMOTHY**
                                        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.**  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).